HONG-AN VU (SBN 266268)
*HVu@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 South Figueroa Street
41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

DOUGLAS H. FLAUM (*pro hac vice*)
*DFlaum@goodwinlaw.com*
**GOODWIN PROCTER LLP**
620 8th Ave, 41st Floor
New York, New York 10018
Tel.: +1 212 813 8800
Fax: +1 212 355 3333

ALEXANDRA V. BARGOOT (*pro hac vice*)
*ABargoot@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
United States
Tel.: +1 617 570 1000
Fax: +1 617 523 1231

Attorneys for Respondent Houlihan Lokey, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of<br><br>FOUR WORLD EVENT OPPORTUNITIES, LP and GENESIS EMERGING MARKETS INVESTMENT COMPANY.<br><br>Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 2:21-mc-1019 CAS JPRx<br><br>**RESPONDENT HOULIHAN LOKEY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 AND CROSS-MOTION FOR PROTECTIVE ORDER**<br><br>Dept:  690<br>Judge:  Hon. Jean P. Rosenbluth<br><br>Petition filed: July 23, 2021<br><br>Filed/Lodged Concurrently with:<br>1. Declaration of Douglas H. Flaum; and<br>2. Proposed Order |

**TO THE COURT AND TO ALL PARTIES IN INTEREST**:

**PLEASE TAKE NOTICE** that pursuant to the Court's August 2, 2021 Order (ECF No. 19), Respondent Houlihan Lokey, Inc. ("Houlihan") hereby opposes Petitioners Four World Event Opportunities, LP and Genesis Emerging Markets Investment Company's Application for an Order Pursuant to 28 U.S.C. § 1782 ("Application") and cross-moves for a protective order as to the discovery sought in the proposed subpoena attached to the Application.

As set forth in the accompanying Memorandum of Points and Authorities, the Application should be denied as Petitioners fail their burden to make the necessary showing under 28 U.S.C. § 1782 for issuance of the proposed subpoena. Alternatively, if for any reason the Application is granted, the Court should (i) issue a protective order to protect Houlihan from undue burden and expense resulting from the proposed subpoena and to protect its confidential materials; and (ii) shift the costs of complying with the subpoena to Petitioners pursuant to Fed. R. Civ. P. 45(d)(2)(B)(ii).

Houlihan's opposition and cross-motion will be and are based upon the Court's August 2, 2021 Order and this Notice; the Memorandum of Points and Authorities, the Second Declaration of Paul Madden filed, and the Declaration of Douglas H. Flaum concurrently herewith; all files and records in this action; and upon such other and further evidence as may be presented to the Court prior to or at the time of the hearing.

To the extent required as this submission concerns a discovery dispute pursuant to the schedule entered by the Court, this cross-motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 29, 2021.

DATED: September 8, 2021

Respectfully submitted,
Goodwin Procter, LLP
Hong-An Vu

/s/ Hong-An Vu
Hong-An Vu

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Douglas H. Flaum (*pro hac vice*)
Alexandra V. Bargoot (*pro hac vice*)
Attorneys for Respondent Houlihan
Lokey, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 2

PROCEDURAL STATUS ...................................................................... 4

ARGUMENT ....................................................................................... 5

I.     THE APPLICATION SHOULD BE DENIED .................................... 5

     A.     Houlihan Is Not A Party In The Foreign Proceeding ......... 7

     B.     The Character Of The Cayman Proceeding Does Not Support
Granting The Application ............................................... 8

     C.     Petitioners Seek To Circumvent Cayman Court Discovery
Restrictions ............................................................... 10

     D.     The Proposed Discovery Is Unduly Intrusive And Burdensome ....... 11

II.    EVEN IF THE COURT WERE INCLINED TO GRANT THE
APPLICATION, IT SHOULD ISSUE A PROTECTIVE ORDER AS
TO ALL OR MOST OF THE PROPOSED SUBPOENA .......................... 20

     A.     The Court Should Quash Depositions Of Houlihan Personnel ......... 20

     B.     The Document Demands Are Hopelessly Overbroad ...................... 22

     C.     Petitioners Cannot Use Section 1782 To Obtain Unlimited
Discovery From Houlihan ................................................ 24

III.   THE COURT SHOULD SHIFT ALL COSTS OF COMPLIANCE
WITH THE PROPOSED SUBPOENA TO PETITIONERS ...................... 24

CONCLUSION ................................................................................. 25

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
    No. 20 MISC. 23, 2020 WL 4700910 (S.D.N.Y. Aug. 13, 2020) ..................... 17

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    No. C 11-1846 LHK (PSG), 2012 WL 1511901 (N.D. Cal. Jan. 27,
    2012) ......................................................................................................... 22

*Arista Records LLC v. Lime Grp. LLC*,
    No. 2:10-cv-02074-MJP, 2011 WL 679490 (W.D. Wash. Feb. 9,
    2011) ......................................................................................................... 11

*Ayyash v. Crowe Horwath LLP*,
    17-mc-482(AJN), 2018 WL 2976017 (S.D.N.Y. June 13, 2018) ..................... 14

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo
    Bank, Nat'l Ass'n*,
    No. 14-CV-09371 (KPF) (SN), 2017 WL 9401102 (S.D.N.Y. Mar.
    2, 2017) ..................................................................................................... 22

*Dibel v. Jenny Craig, Inc.*,
    No. 06-cv-2533 BEN(AJB), 2007 WL 2220987 (S.D. Cal. Aug. 1,
    2007) ......................................................................................................... 11

*Four Pillars Enters. Co. v. Avery Dennison Corp.*,
    308 F.3d 1075 (9th Cir. 2002) ...................................................................... 5

*Harris v. Kim*,
    No. 1:05-cv-00003-AWK-SKO PC, 2013 WL 636729 (E.D. Cal.
    Feb. 20, 2013) ........................................................................................... 11

*HRC-Hainan Holding Co., LLC v. Hu*,
    No. 19-MC-80277-TSH, 2020 WL 906719 (N.D. Cal. Feb. 25,
    2020) ......................................................................................................... 20

*In re an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for
    Use in a Foreign Proc.*,
    No. 17-1466, 2017 WL 3708028 (D.D.C. Aug. 18, 2017) ............................. 14

*In re Application of Quadre Invs., L.P.*,
    No. MC 18-00118 AB, 2019 WL 1075274 (C.D. Cal. Jan. 7, 2019) .... 6, 7, 9, 21

*In re Cahode Ray Tube (CRT) Antitrust Litig., MDL* No. 1917,
  No. C-07-5944-SC, 2013 U.S. Dist. LEXIS 8255 (N.D. Cal. Jan.
  17, 2013) ..................................................................................................... 8

*In re Ex Parte Application of Nokia Corp.*,
  No. 5:13-mc-80217-EJD-PSG, 2013 WL 6073457 (N.D. Cal. Nov.
  8, 2013) .............................................................................................. 12, 19

*In re Ex Parte Application of Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ......................................... 11, 17

*In re Finserve Grp. Ltd.*,
  No. 4:11-mc-2044-RBH, 2011 WL 5024264 (D.S.C. Oct. 20, 2011) ............... 9

*In re Hedrick House Ltd.*,
  No. SA MC 20-00005-DOC (DFM), 2020 WL 3965999 (C.D. Cal.
  Mar. 31, 2020) .................................................................................... 6, 19

*In re Hedrick House Ltd.*,
  No. MC 20-00048-RGK (DFM), 2020 WL 8457437 (C.D. Cal.
  May 29, 2020) ............................................................................... 6, 19, 21

*In re IBM Peripheral EDP Devices Antitrust Litig.*,
  77 F.R.D. 39 (N.D. Cal. 1977) ............................................................... 23

*In re IPC Do Nordeste, LTDA, for an Order Seeking Discovery Under
  28 U.S.C. § 1782*, No. 12-50624, 2012 WL 4448886 ........................... 14

*In re Jud. Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie
  Bank Ltd.*,
  No. 2:14-CV-00797-GMN-NJK, 2015 WL 3439103 (D. Nev. May
  28, 2015) ........................................................................................... 13, 15

*In re Marano*,
  No. CV-09-80020-MISC-DLJ, 2009 WL 482649 (N.D. Cal. Feb.
  25, 2009) ................................................................................................ 14

*In re Matter of Application of O2CNI Co.*,
  2013 WL 5826730 (N.D. Cal. Oct. 29, 2013) ....................................... 14

*In re Michael Wilson & Partners, Ltd., for Judicial Assistance
  Pursuant to 28 U.S.C. § 1782*,
  520 F. App'x 736 (10th Cir. 2013) ....................................................... 25

*In re Pinchuk,*
  13-CIV-22857, 2014 U.S. Dist. LEXIS 59988 (S.D. Fla. Apr. 30,
  2014) ........................................................................................................ 8

*In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to*
  *take Discovery in a Foreign Proc.,*
  No. MC 18-0037 UA (SS), 2018 WL 2146412 (C.D. Cal. May 9,
  2018) ................................................................................................. 14, 16

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash..,*
  634 F.3d 557 (9th Cir. 2011) ................................................................. 5

*Intel Corp. v. Advanced Micro Devices, Inc.,*
  542 U.S. 241 (2004) ....................................................................*passim*

*Interglobe Enters. Priv. Ltd. v. Khanna,*
  8:19-mc-00595-PWG, ECF No. 26, Letter Order (D. Md. Feb. 3,
  2020) ........................................................................................................ 8

*Legal Voice v. Stormans Inc.,*
  738 F.3d 1178 (9th Cir. 2013) ....................................................... 24, 25

*MetaLab Design Ltd. v. Zozi Int'l, Inc.,*
  No. 17-mc080153-MEJ, 2018 WL 368766 (N.D. Cal. Jan. 11,
  2018) ...................................................................................................... 12

*Quadre Invs., LP v. Houlihan Lokey Cap., Inc.,*
  2:18-mc-00118, ECF No. 49, slip op. (C.D. Cal. Nov. 20, 2018) ............ 6, 7, 25

*Rainsy v. Facebook, Inc.,*
  311 F. Supp. 3d 1101 (N.D. Cal. 2018) ............................................... 14

*Soto v. Castlerock Farming & Transp., Inc.,*
  282 F.R.D. 492 (E.D. Cal. 2012) ..................................................... 11, 16

*U.S. v. McGraw-Hill Companies, Inc.,*
  302 F.R.D. 532 (C.D. Cal. 2014) ......................................................... 25

*Warnke v. CVS Corp.,*
  265 F.R.D. 64 (E.D.N.Y. 2010) ............................................................ 16

*Wiwa v. Royal Dutch Petroleum Co.,*
  392 F.3d 812 (5th Cir. 2004) ................................................................ 23

**Statutes**

28 U.S.C. § 1782.................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 26(b)(2)(C)(i) ..............................................................11, 16

Fed. R .Civ. P. 30(b)(6) ............................................................................21

Fed. R. Civ. P. 45(d)(1) ............................................................................11

Fed. R. Civ. P. 45(d)(2)(B)(ii) ..................................................................24

L.R. 7-3 ........................................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to the Court's August 2, 2021 Order (ECF No. 19), Respondent Houlihan Lokey, Inc. ("Houlihan") respectfully opposes Four World Event Opportunities, LP and Genesis Emerging Markets Investment Company's (collectively "Petitioners") Application for an Order Pursuant to 28 U.S.C. § 1782 and cross-moves for a protective order as to the discovery sought in the proposed subpoena attached to the Application.

### PRELIMINARY STATEMENT

This matter is before the Court prematurely.  On July 23, 2021, Petitioners filed an ex parte application urgently seeking an order of judicial assistance pursuant to 28 U.S.C. § 1782 (the "Application") for purported use in a pending appraisal proceeding (the "Appraisal Proceeding") before the Grand Court of the Cayman Islands (the "Cayman Court"), brought by 58.com, Inc. ("58.com" or the "Company") the company that is the subject of the appraisal.  Respondent Houlihan is not a party in the Appraisal Proceeding.  Petitioners initiated this broad request for documents and depositions (i) before any discovery has been exchanged in the Appraisal Proceeding, (ii)  before the Cayman Court has even issued a Directions Order (setting out scope of *party* discovery or the deadlines for any productions in the Appraisal Proceeding)  and (ii) thus before Petitioners could possibly know what discovery is needed from a non-party such as Houlihan.

Against this backdrop, Houlihan submits that Petitioners have not made the necessary showing for issuance of the proposed subpoena.  Petitioners do not meet the standard for  obtaining the discretionary relief they seek under 28 U.S.C. § 1782.  Even if the Court were to decide otherwise, a protective order should issue as to the discovery sought in the proposed subpoena.  Petitioners have made virtually no effort to minimize the burden and expense on non-party Houlihan from the discovery; and indeed, the subpoena is so overreaching to constitute non-party harassment.  By way of example only, the proposed subpoena seeks:

1

- information that exists in public filings with the U.S. Securities and Exchange Commission;
- documents which Houlihan has already provided to the appraisal respondent for the purpose of being produced to the Petitioners in the Appraisal Proceeding;
- documents from February 1, 2019 to the present, even though Houlihan's limited engagement to produce a fairness opinion spanned from only April 27, 2020 – June 15, 2020;
- documents and communications far beyond the subject of Houlihan's fairness opinion related to the 58.com transaction, including any work Houlihan has done for a large number of Chinese Companies.

The overreach does not end there, however, as Petitioners seek an unspecified number of depositions of Houlihan personnel without explaining why this testimony is necessary or even that the Cayman Court would accept such testimony. Through it all, Petitioners seek to impose on Houlihan the significant distractions (and costs, to the extent Houlihan is not otherwise reimbursed) associated with its overbroad and wholly unnecessary requests; and does nothing to protect the confidential and proprietary nature of the myriad information that it seeks to require non-party Houlihan to provide. The Application should be denied on the merits; or, alternatively, a protective order should be issued to protect Houlihan from undue burden and expense resulting from the proposed subpoena and to protect its confidential business information.

## STATEMENT OF FACTS

58.com operates online marketplaces in China. On April 2, 2020, the Company received a preliminary non-binding proposal from Ocean Link Partners Limited, to acquire all of the outstanding ordinary shares of the Company.

Declaration of Duane L. Loft ("Loft Decl."), ECF No. 1-3, Ex. 3, at 903.[1]  On April 20, 2020, the Company announced that its Board of Directors (the "Board") had formed a special committee (the "Special Committee") to evaluate and consider the initial proposal or any alternative strategic option that the Company may pursue.  *Id*. at 905.  On April 30, 2020, the Company received a revised preliminary non-binding proposal to acquire all of the outstanding ordinary shares of the from an enlarged buyer group.  *Id*. at 906.

On April 27, 2020, Houlihan Lokey (China) Limited ("HLCL") was retained as a financial advisor to the Special Committee negotiating the transaction.  *Id*.  In that capacity, on June 15, 2020, HLCL issued an opinion confirming the fairness of the consideration from a financial point of view to certain non-controlling stockholders as of that date.  *Id*. at 917, 921, 936.  The Company executed the merger agreement that same day after a board meeting.  *Id*. at 914.  On September 7, 2020, over 75% of the shares represented at an extraordinary general meeting of shareholders voted to approve the merger transaction.  Petitioners' Application ("Pet. Mem.") at 16.  The transaction closed on September 17, 2020.  *Id*.

On November 10, 2020, 58.com filed the Appraisal Proceeding, seeking a binding determination (in accordance with Cayman Islands law) of the fair value of the shares of shareholders who dissented from the merger.  ECF No. 9 at Declaration of Hong-An Vu, Ex. A Declaration of Paul Madden at ¶ 7 (the "First Madden Decl.").  Various dissenting shareholders, including the Petitioners, have thus become parties to the Appraisal Proceeding.

On July 26-27, 2021, the Cayman Court held its first interlocutory hearing, at which a number of disclosure related matters were discussed.  First Madden Decl. at

---

[1]   For the convenience of the Court, we cite to the Page ID # stamped by the Court on the top of the Declaration of Duane L. Loft and its exhibits, rather than the page numbers of the standalone documents attached as exhibits to his declaration.  For purposes of this Application only and to streamline the issues for this Court, Houlihan accepts the facts alleged by Mr. Loft as they relate to the underlying transaction.

¶ 7.   While a small number of documents have been exchanged – and production of documents will continue to occur on a rolling basis – the vast bulk of discovery has not yet occurred.  Indeed, a Directions Order concerning the timing and full scope of permitted documentary discovery in the appraisal proceeding is still being negotiated by the parties and has not yet been entered by the Cayman Court.  Declaration of Douglas H. Flaum, Ex. A Second Declaration of Paul Madden at ¶ 4 (the "Second Madden Decl.").  Even once the Directions Order has been entered, the parties will have at least 175 days to complete its disclosures from that date.  The Directions Order is highly unlikely to authorize the deposition of any witness, as depositions are extraordinarily rare in Cayman appraisal proceedings, and it is unlikely to authorize the parties to seek documentary discovery from Houlihan as a third party.  First Madden Decl. at ¶ 14.  Nevertheless, in cooperation with the Company and in accordance with prevailing practice in appraisal proceeding of this kind, Respondent has already provided over 750 documents to the Company's Cayman counsel for the express purpose of those documents being produced by the Company to the Petitioners, in conformity with the Directions Order, in the Cayman Proceeding.

**PROCEDURAL STATUS**

On July 23, 2021, Petitioners filed an Application for an Order Pursuant to 28 U.S.C. § 1782.  ECF No. 1.  Petitioners sought to have the Application granted on an ex parte basis, which Houlihan opposed on jurisdictional, procedural and substantive grounds.  ECF No. 9.  On July 29, 2021, counsel for the Petitioners and Respondent met and conferred pursuant to L.R. 7-3, regarding the contemplated motion and the schedule for any responses and replies to the Application.  On August 2, 2021, the parties filed a joint stipulation extending the time to respond to the Application, and setting a briefing schedule, which was ordered by the Court.  ECF Nos. 14, 19.

As a result, Houlihan submits this opposition to the Application and cross-motion for protective order as to the requested discovery.  For the reasons set forth herein, the Application should be denied.  Alternatively, should the Court permit any

discovery against Houlihan to go forward at this time, the cross-motion for a protective order should be granted.

**ARGUMENT**

Houlihan opposes the Application based on the merits and, in the alterative, proposes modifications that should be made to the proposed subpoena if the Court were to grant the Application. Houlihan also asserts that the Petitioners should bear the cost of the discovery they seek. We address the issues sequentially.

## I.   THE APPLICATION SHOULD BE DENIED

In *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241 (2004), the Supreme Court set forth the standard for evaluating an application under 28 U.S.C. § 1782. The Court held that an applicant must first establish that: (i) the respondent resides in the district; (ii) the discovery is sought for use in a foreign proceeding; and (iii) the application is being made by the foreign tribunal or an interested party. *Id*. at 249; *see also* 28 U.S.C. § 1782(a).[2] However, even if those requirements are met, the Court is not obligated to grant the application for discovery. *Intel*, 542 U.S. at 260-61, 264; *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash..,* 634 F.3d 557, 563 (9th Cir. 2011). Both the Supreme Court and Ninth Circuit have made it clear that 28 U.S.C. § 1782 is a discretionary statute and that the reviewing court must consider a series of additional factors before granting the application for discovery. *Intel*, 542 U.S. at 264 ("a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so"); *In re Premises*, 634 F.3d at 563 ("even if [the § 1782 procedural] requirements are met, a district court still retains the discretion to deny a request"); *Four Pillars Enters. Co. v. Avery Dennison Corp*., 308 F.3d 1075, 1078 (9th Cir. 2002) ("Congress gave the federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782").

---

[2]   For purposes of this motion, Respondent does not dispute that these requirements have been satisfied.

In assessing how to exercise its discretion, the Court examines four factors: (i) whether the respondent from whom discovery is sought is "a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions"; and (iv) whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.  Here, those factors strongly militates against granting the Application.

After examining such factors, this Court has found on multiple occasions that the requested discovery should be denied outright or significantly narrowed based on the particular circumstances.  *See Quadre Invs., LP v. Houlihan Lokey Cap., Inc.*, 2:18-mc-00118, ECF No. 49, slip op. at 1 (C.D. Cal. Nov. 20, 2018) (hereafter "*Quadre Investments*") (ruling that the scope of the discovery requests was "overbroad" and ordering the parties substantially narrow the requests); *see also In re Application of Quadre Invs., L.P.*, No. MC 18-00118 AB (GJSx), 2019 WL 1075274 (C.D. Cal. Jan. 7, 2019) (denying motion for review of magistrate's order); *In re Hedrick House Ltd.*, No. SA MC 20-00005-DOC (DFM), 2020 WL 3965999, at *2 (C.D. Cal. Mar. 31, 2020) (denying a request for a 1782 subpoena for documents and testimony where the request was not narrowly tailored.); *In re Hedrick House Ltd.*, No. MC 20-00048-RGK (DFM), 2020 WL 8457437, at *2 (C.D. Cal. May 29, 2020) (granting in part a new, more narrowly tailored application submitted by the same Petitioners in 2020 WL 3965999, though still denying the request for deposition testimony and denying certain requests for documents as being unduly burdensome.). In particular, the Court's broad discretion in this matter is demonstrated in *Quadre Investments*, where a party also in a Cayman Court proceeding sought to serve a similarly overly broad subpoena on a Houlihan affiliate.  *Quadre Investments*, ECF No. 12.  After full briefing by the parties, Magistrate Standish *denied* petitioners' request for a 30(b)(6) deposition, substantially *narrowed* the document requests to

three limited topics, and *required* petitioners to share in the costs of this discovery. *See Quadre Investments* at ECF No. 49; *see also In re Application of Quadre Invs., L.P.*, 2019 WL 1075274 (denying motion for review of magistrate's order). Petitioners' requested relief is certainly not a given and the Court may properly deny all relief sought or, at the very least, significantly curtail and/or postpone the requested discovery as the Court did in *Quadre Investments*.

### A.   Houlihan Is Not A Party In The Foreign Proceeding

The first *Intel* factor seeks to determine whether Respondent is a participant in the foreign proceeding.   While the *Intel* court was concerned about allowing applicants to utilize § 1782 proceedings to obtain discovery from actual parties in the foreign proceeding, this Court has also expressed concerns when discovery is being sought of a non-party.   *Intel*, 542 U.S. at 264 ("A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence"); *In re Application of Quadre Invs., L.P.*, 2019 WL 1075274, at *2 ("Judge Standish expressed concerns with the fact that Respondent is not a party to the Appraisal Proceeding (*Intel* factor 1).").   Houlihan is not a party in the Cayman proceeding, though its relevant documents are captured by the Company's disclosure obligations. Second Madden Decl. at ¶ 6.   This factor is neutral for Petitioners, at best.[3]

Indeed, the premature nature of Petitioners' Application is laid bare in the analysis of this *Intel* Factor 1.   Since the Cayman's Proceeding is in its infancy – with not even the initial "Directions Order" being issued – no decision has been made as to whether any Houlihan personnel will submit a witness statement in the Cayman case.   Should this occur, Houlihan will likely be required to furnish disclosure of

---

[3]    Petitioners assert that they could only obtain discovery directly from Houlihan in the Cayman proceeding with great difficulty.  Pet. Mem. at 19.  While true, that undermines Petitioners entire application: § 1782(a) expressly endorses the use of letters rogatory to obtain discovery from third-parties for use in foreign proceedings (*see* 28 U.S.C. § 1782(a)) and Petitioners should exhaust that process before burdening this Court with the current application.  Further this ignores the fact that Houlihan has cooperatively produced documents for use in the Appraisal Proceeding.

documents relevant to that testimony, at which point this Factor 1 would cut decisively against Petitioners. *Interglobe Enters. Priv. Ltd. v. Khanna*, 8:19-mc-00595-PWG, ECF No. 26, Letter Order at 3 (D. Md. Feb. 3, 2020) (quashing subpoena because, inter alia, the target committed that "he will participate in such discovery as deemed appropriate by the tribunal"); *In re Pinchuk*, 13-CIV-22857, 2014 U.S. Dist. LEXIS 59988, at *7 (S.D. Fla. Apr. 30, 2014) ("The Discovery Subjects also seek to quash the deposition subpoena issued to Mr. Korf.  In return, they have agreed to make him available as a witness at the LCIA proceedings.  In so doing, the Discovery Subjects have alleviated any concern that Mr. Korf's testimony will be unavailable in the LCIA proceeding. This is sufficient to quash the deposition subpoena issued to Mr. Korf.") (citing *In re Cahode Ray Tube (CRT) Antitrust Litig., MDL* No. 1917, Case No. C-07-5944-SC, 2013 U.S. Dist. LEXIS 8255 (N.D. Cal. Jan. 17, 2013)).  For this reason alone, this Court should deny the Petition – even if without prejudice to Petitioners' ability to renew it at a more appropriate time.

### B.     The Character Of The Cayman Proceeding Does Not Support Granting The Application

The second *Intel* factor examines "the nature of the foreign tribunal, the *character of the proceedings underway abroad*, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264 (emphasis added).  This factor supports denial of the Application, in particular the denial of the deposition.

Petitioners' discussion of this factor focuses on the theoretical receptivity of Cayman Courts to foreign discovery, while only superficially addressing the relationship of the discovery sought in this case to the nature of the proceeding before the foreign tribunal.  The Cayman action is an appraisal proceeding. The sole issue in the case is the determination of the fair value of the Company on June 15, 2020. *See* First Madden Decl. at ¶ 7.  Any assessment of this *Intel* factor must be evaluated through that prism.

Petitioners concede the limited nature of discovery in Cayman appraisal proceedings and that "[t]here is no automatic discovery" in such proceedings. Pet. Mem. at 19. Despite that the jurisdiction has set up limited and tailored discovery for this type of proceeding within its courts, Petitioners nonetheless leap to the conclusion that the Cayman Court overseeing this proceeding would accept and welcome broad-ranging non-party document and deposition discovery from Houlihan. Tellingly, Petitioners are unable to identify a single case where the deposition of a financial advisor has ever been admitted into evidence in a Cayman appraisal proceeding, and we are aware of none.[4] *In re Application of Quadre Invs., L.P.*, 2019 WL 1075274, at *2 (affirming Magistrate Judge Standish's denial of the requested deposition on these grounds) (stating that, "although Petitioners emphasize that Respondent's 30(b)(6) deposition would assist the Cayman Court, they have not shown that that court is at all likely to rely on such evidence: as Respondent points out, Petitioners have identified no cases where the deposition of a transaction financial advisor has been admitted in any Cayman appraisal proceeding. This appears to be relevant to *Intel* factor 2."); First Madden Decl. at ¶ 14. The discovery requested in the Application does not match with the character of the proceedings underway abroad.

The current circumstances further show that their Application is out of step with the character of the proceeding as Petitioners ignore that the Cayman Court has not yet even issued its Directions Order stating what discovery it will allow, and along what timeframe. And while there is no requirement that discovery be underway in the foreign proceeding for a § 1782 application to be granted, the reasonable conclusion is that this Application is premature here because (1) of the nature of this foreign tribunal and character of this proceeding (being limited in scope and

---

[4]    *See In re Finserve Grp. Ltd.*, No. 4:11-mc-2044-RBH, 2011 WL 5024264, at *3 (D.S.C. Oct. 20, 2011) ("this Court has been presented with no indication as to the 'receptivity of the foreign government or the court or agency abroad to United States federal court assistance.'").

discovery) as described, (2) Houlihan is a non-party who has in fact produced materials which Petitioners will receive in due course in the foreign proceeding, and (3) there is no indication that the Cayman Court will desire further materials from Houlihan to render a determination of the Company's fair value.

**C.    Petitioners Seek To Circumvent Cayman Court Discovery Restrictions**

The third *Intel* factor examines whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions." *Intel*, 542 U.S. at 265. This factor strongly tilts against granting the Application.

As noted above, Petitioners do not have the unfettered right to take third-party discovery in a Cayman appraisal proceeding, even if the Cayman Court had jurisdiction over the third-party. The current subpoena for documents is incredibly broad in scope despite the narrow nature of the Appraisal Proceeding and discovery permitted by the Cayman Court. Regarding the requested deposition, during the July hearing before the Cayman Court regarding discovery, neither the Petitioners nor any of the other dissenting stockholders ever mentioned the need for *party* depositions, much less the current application for *non-party* testimony. *See* First Madden Decl. at ¶ 14. This significantly undercuts Petitioners' argument regarding the need for this deposition. Under these circumstances, it comes with little grace and no legal merit for Petitioners to demand such intrusive discovery from non-party Houlihan. This Court understandably should be skeptical about granting relief requested by a small handful of dissenting stockholders without guidance from the Cayman Court.

In addition to seeking discovery beyond the scope of that available in the foreign jurisdiction, the Petitioners also seek to obtain this discovery before they would be entitled to receive these materials in the Appraisal Proceeding. The parties are still negotiating the Directions Order, after which Respondents will receive materials from Houlihan (i.e. those numerous documents it turned over to 58.com's Cayman's counsel) at an appropriate time and in accordance with the Directions

Order issued by the Cayman Court.  They should not be permitted to get a jump start on the discovery and circumvent the forthcoming Directions Order.

### D.     The Proposed Discovery Is Unduly Intrusive And Burdensome

The fourth *Intel* factor examines whether the discovery sought by Petitioners is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc*., 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016).  This factor alone provides sufficient grounds for denying the relief sought in the Application.

The Petitioners' Application cannot meet the above standard, because Petitioners' request is premature.  Petitioners have not yet reached a point where they can even begin to assess their need for documents from non-party Houlihan for the obvious reason that they have not yet taken discovery from the parties or reviewed the  documents Houlihan has **already** given to Caymans counsel for production in the interparty production process (and to be disclosed according to the Directions Order, once issued).  Courts have routinely rejected subpoenas where the information sought from a non-party could be obtained more easily from the parties to the proceeding.[5] *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); *see, e.g., Harris v. Kim*, No. 1:05-cv-00003-AWK-SKO PC, 2013 WL 636729, at *2 (E.D. Cal. Feb. 20, 2013); *Arista Records LLC v. Lime Grp. LLC*, No. 2:10-cv-02074-MJP, 2011 WL 679490, at *2 (W.D. Wash. Feb. 9, 2011); *Dibel v. Jenny Craig, Inc*., No. 06-cv-2533 BEN(AJB), 2007

---

[5]     Parties must "obtain discovery from one another before burdening non-parties with discovery requests." *Soto v. Castlerock Farming & Transp., Inc*., 282 F.R.D. 492, 505 (E.D. Cal. 2012); *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i) (court "must" limit discovery if the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive").

WL 2220987, at *2 (S.D. Cal. Aug. 1, 2007). For these reasons, the Court should deny the Application, or at a minimum, stay the issuance of any subpoena until the parties in the Appraisal Proceeding have made their productions and the parties have had an opportunity to determine whether there is anything unique and relevant that should be provided from Houlihan. Otherwise, any requests for documents at this time are a burdensome fishing expedition.

Petitioners apparently recognize that their Application fails this fourth *Intel* factor, but suggest that this defect can be remedied though a meet-and-confer. Respectfully, that is not the way discretionary Section 1782 petitions are supposed to work as this "position overlooks [Petitioners'] burden to come to the court with narrowly-tailored request in the first instance" and weighs in favor of denying the Application. *In re Ex Parte Application of Nokia Corp.*, No. 5:13-mc-80217-EJD-PSG, 2013 WL 6073457, at *3-4 (N.D. Cal. Nov. 8, 2013).

The subpoena's contents are also not narrowly tailored, unduly intrusive, and burdensome on their face in the following ways.

***First***, the requests are not narrowly tailored to the relevant time period. HLCL was retained by 58.com's Special Committee on April 27, 2020, and HLCL issued its fairness opinion on June 15, 2020 for a merger that closed on September 7, 2020. *See* Loft Decl., Ex. 3, at 906, 917. Accordingly, the relevant valuation date is June 15, 2020 (or at the latest September 7, 2020). However, rather than limit its requests to the relevant time periods, Petitioners have pressed for documents covering a significantly broader time period from February 1, 2019 (***well over a year before HLCL was engaged in the matter***) to "the present" (***well over a year after HLCL's fairness opinion was rendered***). This suggests that the Petitioners are on a fishing expedition and is an improper effort to saddle Houlihan with burdensome and unnecessary discovery. *See MetaLab Design Ltd. v. Zozi Int'l, Inc.*, No. 17-mc-80153-MEJ, 2018 WL 368766, *4 (N.D. Cal. Jan. 11, 2018) (rejecting § 1782

1    application that was "overbroad temporally and in scope").[6]

2          *Second*, the requests are not narrowly tailored to reflect Houlihan's role as a

3    non-party in the Cayman Appraisal Proceeding: providing a fairness opinion to the

4    Special Committee on June 15, 2020.  Indeed, the Petitioners' own application admits

5    Houlihan's circumscribed involvement, stating that the Application includes requests

6    related to the "(i) the process undertaken by the 58.com Special Committee that

7    culminated in the 58.com's board's approval and recommendation of the Merger to

8    58.com stockholders and (ii) the valuation analyses provided by Houlihan to the

9    Special Committee concerning the fairness of the Merger price to the 58.com

10   minority stockholders' shares." Pet. Mem. at 30.  However, only the second category

11   relates to Houlihan.  The plain language of the requests is also not narrowly tailored,

12   requesting in nearly each request for "All Documents and Communications" on broad

13   topics.  *See In re Jud. Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank*

14   *Ltd.*, No. 2:14-CV-00797-GMN-NJK, 2015 WL 3439103, at *9 (D. Nev. May 28,

15   2015) (stating "courts should be more inclined to grant applications that seek either

16   a single document or only those documents relating to a particular event" and denying

17   the petitioner's requests that included broad and virtually all-encompassing

18   categories of information such as "[a]ll [d]ocuments concerning the assets and

19   liabilities" of a company and denying an equally broad subpoena) (citation and

20   internal quotations omitted).

21          As examples only, Request No. 16 asks for all documents and communications

22   related to the negotiation of the Merger Agreement and Request No. 14 asks for all

23

24   ───────────────────

25   [6]      Petitioners have filed § 1782 applications against several non-parties seeking
     discovery for the Appraisal Proceeding, all linked either to General Atlantic or
26   Warburg Pincus (two shareholders of 58.com).  The time period of the subpoena to
     Houlihan is entirely disconnected from Houlihan's involvement in the matter.  This
27   indicates that Petitioners are issuing blanket requests to these non-parties without
     any thought as to the relevance of the time period or subject matter in relation to
     each recipient.  By doing so, they have cast an incredibly broad net in pursuing this
28   fishing expedition which is not narrowly tailored, not linked to specific need for
     Houlihan's documents or testimony, and is overly burdensome.

13

documents and communications concerning any condition that the Merger be approved by a majority of the shares not held by the Buyer Group and its affiliates, which are entirely unrelated to HLCL's specific task of rendering a fairness opinion regarding the specific transaction. The unapologetic overbreadth of the requests suggests that Petitioners may be fronting this § 1782 petition to conduct a broad fishing expedition or for some other purpose. *See In re Matter of Application of O2CNI Co.*, 2013 WL 5826730, at *12 (N.D. Cal. Oct. 29, 2013) ("The court also may consider whether the section 1782 request is a 'fishing expedition' or a vehicle for harassment'") (citation omitted); *Ayyash v. Crowe Horwath LLP*, 17-mc-482(AJN), 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018) (denying § 1782 petition and noting that "the Court is concerned that Ayyash is using the § 1782 petition as a fishing expedition to determine if it should pursue litigation against Respondents."). "That Applicant has not limited the topic of communications is emblematic of the burden of the subpoena." *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1113-14 (N.D. Cal. 2018).[7]

**Third**, the requests are not narrowly tailored to exclude information that is more easily obtainable from parties in the Appraisal Proceeding. "The Court is reluctant to subject a third party to the burden of searching for and producing documents that appear to be more logically in the possession of a party." *In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to take Discovery in a Foreign Proc.*, No. MC 18-0037 UA (SS), 2018 WL 2146412, at *7 (C.D. Cal. May 9, 2018) (M.J. Segal) (denying § 1782 application).[8] "When the information

---

[7] *See also In re Marano*, No. CV-09-80020-MISC-DLJ, 2009 WL 482649, at*3 (N.D. Cal. Feb. 25, 2009) (denying § 1782 application after finding that applicant "has not demonstrated that the burdensome discovery . . . is relevant to the British divorce proceeding"); *In re an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proc.*, No. 17-1466 (BAH), 2017 WL 3708028, at *4-5 (D.D.C. Aug. 18, 2017) ("The fourth factor is the salient one . . . . In contrast to the thin relevance of the requested discovery, the burden it would impose on the respondents is substantial.").

[8] *See also In re IPC Do Nordeste, LTDA, for an Order Seeking Discovery Under 28 U.S.C. § 1782*, No. 12-50624, 2012 WL 4448886, *9 (E.D. Mich. Sept.

sought is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome." *In re Jud. Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN-NJK, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015).  That is precisely the case here.

- ▪ ***Fairness Opinion*** - Petitioners seek documents concerning HLCL's fairness opinion.  Request Nos. 19, 25, 27, 28.  58.com's SEC filings contain extensive information concerning that issue.  Loft Decl., Ex. 3, at 936-42 (and the exhibits and schedules referred to therein), 1162-67.  The Company even included a copy of the fairness opinion in its SEC filings, disclosing the nature of Houlihan's engagement, the information it reviewed, the assumptions underlying the opinion, and the firm's relationship with various parties.  *Id*.  The Company also provided detailed information concerning the selected companies and discounted cash flow analyses performed by HLCL in connection with its opinion, including the identities of the companies used in the analysis, the enterprise to adjusted EBITDA ratios over time periods for the companies used in the analysis, the perpetuity growth and discount rates used in the discounted cash flow analysis, and other detailed information relevant to the opinion. *Id*. at 939-42.  Since that date, at the request of 58.com, Houlihan has provided to the Company its communications to and from the Company and almost a dozen third parties (e.g. legal counsel to the Special Committee, legal counsel to the Company, financial consultants working with the Company, etc.) – all so that such information can be disclosed to Petitioners and other dissenting shareholders in the Appraisal Proceeding, according to the timetable to be specified in the Directions Order.  *See* Declaration of Douglas H. Flaum at

---

25, 2012) (granting motion to quash § 1782 subpoena after concluding that "all of the evidence sought is available from a more convenient and less burdensome source.").

¶ 4 (the "Flaum Decl."); Second Madden Decl. at ¶ 6.  *See also Warnke v. CVS Corp.*, 265 F.R.D. 64. 70 (E.D.N.Y. 2010) (subpoena was quashed because, inter alia, "some of the information sought in the Subpoenas ha[d] already been produced" in the main litigation); *Soto*, 282 F.R.D. at 505; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i) (court "must" limit discovery if the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive").  Petitioners have the information it reasonably needs concerning HLCL's fairness opinion.

- *Merger* - Petitioners also seek *from Houlihan* extensive documents concerning 58.com's business and the merger transaction, including documents pertaining to the merger, strategic alternatives, acquisition offers, alternative bidders, a potential IPO, company projections.  Request Nos. 1-17, 21, 24, 26-28.  However, there is no reason to believe that Houlihan was involved in any of these matters and certainly no reason to believe that Houlihan would be the best source for information on these myriad Company-specific topics.  Indeed, Petitioners fail to explain why this information is being sought from a non-party rather than from the Company or the Company's other advisors who were involved in these matters.  *See In re Pioneer Corp.*, 2018 WL 2146412, at *7 (denying the § 1782 Application and stating that "[t]he Court is reluctant to subject a third party to the burden of searching for and producing documents that appear to be more logically in the possession of a party.").  Compounding the impropriety of these requests, much of this information about the Company and the transaction was included in the company's SEC filings.  *See, e.g.*, Loft Decl., Ex. 3.  As an example, the financial projections referred to in Request 5 were created by the Company and are also publicly available in the SEC filings.  *Id.* at 932-34.  Instead, Petitioners seek to foist upon Houlihan the burden of responding to overbroad requests for documents

that are more easily obtainable from parties in the proceeding. *See Qualcomm*, 162 F. Supp. 3d at 1044-45 (denying § 1782 application and finding that the requests were not narrowly tailored because they "include documents that [applicant] should already have or that were served by other parties."); *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20 MISC. 23, 2020 WL 4700910, at *3 (S.D.N.Y. Aug. 13, 2020) (finding a subpoena burdensome when the topics included respondent's communications with parties already involved in the underlying action and therefore readily available from other sources.).

- ▪ ***Buyer's Group Communications*** - Petitioners also seek documents and communications exchanged with the Buyer Group and documents regarding the nature of the affiliate relationship(s) among members of the Buyer Group. Request Nos. 8, 9, 20, 22. Following the merger, the Buyer Group succeeded to the business of 58.com. Petitioners offers no insight why it does not have the requested information, why it is relevant to the valuation of 58.com as of June 15, 2021, and most importantly for these purposes, why it believes non-party Houlihan should be burdened with searching for and ultimately producing this information.

- ▪ ***Appraisal Proceeding*** – Highlighting the overbreadth of their proposed subpoena, Petitioners inexplicably seek documents regarding "a potential, pending, or ongoing Cayman Island Appraisal Proceeding." Request No. 23. However, they do not define what, if any, particular "Cayman Island Appraisal Proceeding" they are referring to. Assuming it is the one to which Petitioners are a party, they obviously have greater information than non-party Houlihan. There is no justifiable basis for Petitioners to make this request of Houlihan. This is harassing and a fishing expedition.

**Fourth**, the requests are burdensome because Respondents have already provided materials responsive to many of Petitioners' requests to the Company's

1    counsel.  As such, this Application is premature until the Petitioners receive these

2    materials pursuant to the Directions Order, and then reviews them and the other

3    materials it receives from the Company and the Special Committee.

4        In Petitioners' brief, they summarize their document requests as targeting four

5    buckets of information.  Pet. Mem. at 20.  Yet Houlihan has already provided these

6    to the Company's Caymans counsel, on the basis that they will form part of the

7    interparty disclosure in the Appraisal Proceeding in accord with the Directions Order,

8    once issued.  Houlihan has produced to the Company "(i) documents pertaining to

9    the fairness of the Merger price and the process used to reach it," including martials

10   shared by the Special Committee, underlying analysis and models, as well as

11   communications; "(ii) documents, including financial analysis, email or other

12   correspondence, meeting minutes and any other materials used, reviewed or prepared

13   in support of Houlihan Limited's fairness opinion and/or any advice provided by

14   Houlihan Limited in connection with the Merger," including all materials relied upon

15   in producing the fairness opinion; "(iii) documents concerning 58.com's valuation,

16   including documents concerning any forecasts of the Company's future performance,

17   financial projections, and cash flow projections prepared by the Company or any

18   other entity," including communications with the Company and materials received

19   from the Company; and lastly, to the extent any exist and are in its possession, "(iv)

20   documents pertaining to any alternative bids to acquire the Company."   Flaum Decl.

21   at ¶ 4.  To the extent that Petitioners' subpoena requests actually conform to these

22   buckets, they are duplicative of the disclosure Houlihan has already made.

23   Petitioners should wait to receive these material in accordance with the forthcoming

24   Directions Order  and not seek to evade the process in the Cayman Court by

25   attempting to receive such materials prematurely.

26       In sum, whether taken individually or collectively, the requests are unduly

27   burdensome (as well as being grossly premature).  In addition, as discussed below,

28   the subpoena seeks unnecessary and unauthorized deposition testimony on broad

1    topics that do not target the narrow issue of value on a particular date, June 15, 2020.

2    As a result, "[b]ecause [the] subpoena application is not narrowly tailored, and

3    appears highly intrusive as well as unduly burdensome, this factor weighs strongly

4    against [applicant's] request." *Nokia*, 2013 WL 6073457 at *3.

5        This Court has supported a full denial of such similarly overbroad Applications

6    on prior occasions and it is the appropriate outcome here, particularly given the

7    premature nature of the Application in this set of circumstances.  *In re Hedrick*

8    *House, Ltd.*, 2020 WL 3965999, at *2 (denying an application for documents and a

9    deposition for being burdensome and not narrowly tailored).  After receiving the

10   documents and communications that Houlihan has already shared in the Appraisal

11   Proceeding and after receiving the productions of the parties to the proceeding, if the

12   Petitioners were to then present a narrowly tailored application of materials that it

13   still needs, the Court could then review that new application and potentially grant

14   nonburdensome requests if merited.  *In re Hedrick House, Ltd.*, 2020 WL 8457437,

15   at *2 (granting in part a new, more narrowly tailored application submitted by the

16   same Petitioners in 2020 WL 3965999, though still denying the request for deposition

17   testimony and denying certain requests for documents as being unduly burdensome.)

18   The Respondent's position is not that Petitioners **may never** have grounds for an

19   Application, but rather that the current Application is premature rendering it

20   burdensome and overbroad in substance; therefore, it should be denied without

21   prejudice.

22              *      *      *      *      *

23       As the foregoing demonstrates, at least three (and probably all) of the four *Intel*

24   factors counsel against granting the Application.  Given this dynamic, and the

25   tremendous burden attendant to the discovery, the Application should be denied.

26

27

28

## II. EVEN IF THE COURT WERE INCLINED TO GRANT THE APPLICATION, IT SHOULD ISSUE A PROTECTIVE ORDER AS TO ALL OR MOST OF THE PROPOSED SUBPOENA

Houlihan submits that Petitioners' failure to meet its statutory burden on the Application bars it from obtaining the discovery sought in the proposed subpoena. Without prejudging that issue, and in order to avoid further motion practice if a subpoena issues, Houlihan also address the appropriateness of issuing a protective order to quash or modify the terms of the subpoena . Houlihan respectfully submits that fundamental fairness requires that any subpoena issued in connection with this Application be narrowly tailored and sharply curtailed to minimize the burden and expense to the responding third party.

### A. The Court Should Quash Depositions Of Houlihan Personnel

The Court should first deny Petitioners' request for depositions of Houlihan personnel. *First*, as noted above, depositions have not been authorized by the Cayman Court for use in the Appraisal Proceeding – not from 58.com's officers, not from the 58.com's Special Committee, not from the Buyer Group, not from anyone. The introduction of foreign deposition testimony generally requires permission from the Cayman Court, for which there is no evidence that it has ever been obtained. *See* First Madden Decl. at ¶ 14. It is not accidental that Petitioners cannot point to a single Cayman appraisal case where deposition testimony from a third-party rendering a fairness opinion has ever been admitted into evidence. Indeed, the Petition mischaracterizes the central case it relies upon to justify the request for deposition testimony. Pet. Mem. at 31 citing *HRC-Hainan Holding Co., LLC v. Hu*, No. 19-MC-80277-TSH, 2020 WL 906719, at *15 (N.D. Cal. Feb. 25, 2020). This case granted a deposition **of a party** in the underlying litigation who allegedly breached the contract at issue in the litigation. *Id.* This is not parallel to the current facts where Petitioners seek to depose a third party that served a limited role in a narrow Appraisal Proceeding. Authorizing depositions of Houlihan now without a

plain showing by Petitioners that the  Cayman Court actually wants this testimony is unnecessary and contrary to the law of this District.  *In re Application of Quadre Invs., L.P.*, 2019 WL 1075274, at *2 (confirming Magistrate Judge Standish's ruling to deny a deposition request relating to a Cayman appraisal proceeding because there was no evidence that the Cayman Court would rely on the testimony, even though the testimony might assist it.); *In re Hedrick House, Ltd.*, No., 2020 WL 8457437, at *2 (denying deposition testimony where the petitioner did not provide evidence that the deposition testimony was *needed* for use in the foreign proceedings.).

*Second*, the deposition topics are neither defined with particularity, nor narrowly tailored to the sole issue in which Houlihan was involved: the issuance of the fairness opinion on June 15, 2020.  *See* Fed. R .Civ. P. 30(b)(6) (subpoena must describe "with reasonable particularity the matters for examination.").

- Topic 1 requests that Houlihan provide testimony on all documents produced in response to the proposed subpoena and the methods by which they were identified, collected and reviewed for production.  Leaving aside that the topic has nothing to do with the value of the Company on June 15, 2020, and may trigger issues of privilege and/or work product, it simply is not appropriate to ask a corporate designee – especially a non-party – to provide testimony on every document produced in response to a subpoena. That is even more so here where Petitioners seek to burden Houlihan for an incredibly large and burdensome production set.

- Topic 5 requests that Houlihan provide testimony on its "analysis, review, and use of any financial projections or plans Concerning the Company."  In proposing this topic, Petitioners highlight their fundamental misunderstanding of the source of projections used by Houlihan in connection with the rendering of its fairness opinion.  As discussed above, 58.com disclosed in its SEC filings its projections and Houlihan plainly stated in its fairness opinion that the Company management furnished to

Houlihan financial projections for fiscal years 2020-2025. Loft Decl., Ex. 3, at 932-34, 1163. Houlihan is not the appropriate party to address questions or quarrels that Petitioners have with the Company's projections.

- Topic 6 requests that Houlihan provide testimony on its "review and consideration of any valuation reports, fairness or solvency opinions, appraisals, analyses, reviews or other Documents Concerning the value, market value, book value or fair value of the Company, its stock, and/or any of the Company's assets or businesses, including any assumptions underlying all analyses, opinions, or projections Concerning the Company." The topic is hopelessly overbroad and fails to provide sufficient particularity as to the requested testimony. *See Apple Inc. v. Samsung Elecs. Co., Ltd*., No. C 11-1846 LHK (PSG), 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) (purpose served by Rule 30(b)(6) "does not extend to burdening the responding party with production and preparation of a witness on every facet of the litigation."). The topic is not limited temporally to the forty-nine day period in which Houlihan performed its fairness opinion engagement. It also appears to seek expert testimony for which the firm has not been designated or compensated. Further, the endless reach of the topic suggests that Petitioners simply intend to improperly use the topic as a catch-all topic to ask any question it wants of Houlihan deponents. *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-CV-09371 (KPF) (SN), 2017 WL 9401102, at *2 (S.D.N.Y. Mar. 2, 2017) (denying discovery because the materials sought were "much closer to expert industry discovery rather than fact discovery."). For any and all of these reasons, the Court should issue a protective order barring Petitioners from taking the proposed depositions of Houlihan witnesses.

**B.    The Document Demands Are Hopelessly Overbroad**

As discussed above, the document requests included in the proposed subpoena are hopelessly overbroad and disproportional to the needs of the Cayman appraisal case. *See Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir. 2004) ("A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad."). The requests are not limited temporally to the period that Houlihan was engaged to render a fairness opinion for the merger transaction. Nor are they bounded by any nexus to the single issue in the case in which Houlihan had involvement: the evaluation of 58.com's fair value as of June 15, 2020. The requests are not even limited to use in the Cayman proceeding, nor have Petitioners provided a confidentiality order to prevent their disclosure and/or use in other actions.

Instead, as discussed above, the requests indiscriminately seek broad categories of documents without any attempt by Petitioners to narrow and refine the requests to the specific valuation issues it challenges in the appraisal proceeding. *See In re IBM Peripheral EDP Devices Antitrust Litig*., 77 F.R.D. 39, 41-42 (N.D. Cal. 1977) ("instead of using rod and reel, or even a reasonably sized net, [propounding party] would drain the pond and collect the fish from the bottom. This exercise goes beyond the bounds set by the discovery rules."). Petitioners' insensitivity to the burden it seeks to impose is further evidenced by the fact that the proposed subpoena would require non-party Houlihan to review thousands of emails and electronic data before the Petitioners have even begun to assess what their true need is after parties have made their productions and Petitioners have reviewed what Houlihan has already produced. That is an unfair and undue burden to impose on non-party Houlihan when neither the Dissenters nor the Company have produced any documents yet. Houlihan, a non-party, should not be forced to bear the burden and expense of Petitioners' bloated discovery requests, particularly when those requests were not authorized by the Cayman Court, let alone shown any interest in them. Absent further guidance from the Cayman Court or a sharp narrowing by Petitioners of the information that it seeks and how that information relates to the narrow issue in the

case, a protective order should issue as to the document requests attached to the proposed subpoena. Additionally, responding to the Petitioners' requests will expose non-party Houlihan's confidential and proprietary information. If any subpoena is issued, the Court should require the parties to negotiate a confidentiality agreement to protect any non-public information that Houlihan may be required to produce.

**C.    Petitioners Cannot Use Section 1782 To Obtain Unlimited Discovery From Houlihan**

A protective order also is necessary to prevent the overreach sought by Petitioners in its proposed order. In addition to unprecedented depositions and overbroad document requests, Petitioners also ask to leave open the door to pursue endless future fishing expeditions of Houlihan and its employees. *See* Proposed Order, at ¶ 4 ("The Court shall retain jurisdiction over this matter for the purpose of . . . assessing any supplemental request for discovery assistance that may be requested by Petitioner."). Petitioners are essentially indicating that they expect to serve additional follow-up subpoenas on Respondent or its employees, whether including new document requests, deposition topics, or additional depositions, to obtain the documentary and testimonial evidence for use in the foreign proceeding. This attempt by Petitioners to drag out the process and further burden Houlihan and the Court with even more overreaching request, should thus be stricken from any Order issued by the Court.

**III.   THE COURT SHOULD SHIFT ALL COSTS OF COMPLIANCE WITH THE PROPOSED SUBPOENA TO PETITIONERS**

If for any reason the Court is inclined to grant any portion of the relief sought in the Application (with or without modifications to the time, scope or form of discovery), then it should also shift to Petitioners the costs incurred by Houlihan in complying with those requests. Rule 45(d)(2)(B)(ii) applies to fee-shifting in the context of a Section 1782 application and "requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." *Legal*

*Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013); *see also In re Michael Wilson & Partners, Ltd., for Judicial Assistance Pursuant to 28 U.S.C. § 1782*, 520 F. App'x 736, 741 (10th Cir. 2013) (court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.") (citation and internal quotations omitted); *Quadre Investments,* ECF No. 49 at 2 (ordering Petitioners and Respondent to share in the costs equally.).  As one Ninth Circuit district court recently explained:

> Someone must pay the costs of production — the issue is whether those costs should fall on a party in the suit or a non-party who is powerless to control the scope of discovery. The Ninth Circuit has clarified that the former bears the burden, to the extent that expenses are significant.

*U.S. v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 535-36 (C.D. Cal. 2014).

Here, Houlihan already has incurred substantial fees responding to Petitioners' ex-parte application and requests for overbroad and burdensome discovery, and those costs will escalate significantly unless the subpoena is quashed or sharply modified. A search for documents in response to these expansive requests is likely to yield thousands of documents.  The cost of reviewing and responding to the subpoena will be significant, particularly when compared to the compensation received for its work on the fairness opinion for the merger.  Houlihan should not be forced to incur that financial burden, particularly when Petitioners never advised the Cayman Court of the need for this discovery when it had every opportunity to do so and made no effort to narrow the scope of the requested discovery to the specific valuation issues that it has placed in issue.  Houlihan's fees and costs in responding to the Application and any subpoena issued in connection therewith should be paid by Petitioners.

## CONCLUSION

In conclusion, for the foregoing reasons, the Application should be denied and/or a protective order issued as to the discovery sought therein.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:          September 8, 2021                    GOODWIN PROCTER LLP


By:/s/ Hong-An Vu
　　　Hong-An Vu
　　　*HVu@goodwinlaw.com*
　　　Douglas H. Flaum
　　　*DFlaum@goodwinlaw.com*
　　　Alexandra V. Bargoot
　　　*ABargoot@goodwinlaw.com*


Attorneys for Respondent Houlihan
Lokey, Inc.